If you may please the court, I'm Brian Stockton, Senior Deputy Attorney General, and I'm here representing Nevada Attorney General. It's Catherine Cortez Masto. And I would like to reserve a little time for rebuttal if possible. And just to start off with, to set the picture, when you're in Las Vegas and you're driving down Charleston Boulevard, it stretches from one side of the Las Vegas Valley to the other side, and it's all built up, developed city area. Until you get to the very west end of Charleston Boulevard, and then all of a sudden the development stops. And when you drive up this road, it's State Route 159, and you go around to the left, and the Blue Diamond Hill, which is the area that's at issue today, completely blocks off Las Vegas. And then you turn up a road, and you go up onto the right upper road, and you go into the Red Rock Canyon, which has these spectacular sandstone cliffs and rock formations. And you can't even tell that you're close to a city the size of Las Vegas. And they describe it as being a balm for the soul to be out there. And the people down there describe that as the closest thing they have to Lake Tahoe down there as far as a natural resource. And that's why it was so important to the legislature that when they enacted this, to protect this resource that they have in Las Vegas. And I'd like to quote from the –  Say again, Your Honor? Why can't the county do it? Didn't they actually do it? Your Honor, the county eventually did it after the legislature did. But at the time the legislature passed – But it's a local matter, isn't it? Zoning is a local matter, isn't it, in Nevada law? Your Honor, Clark County was created by the legislature. It's not a creature of the Constitution. It was created by carving off a piece of what was Lincoln County before that in 1909, and that's in Nevada Revised Statute 243.035. The legislature is the source of the zoning power. The legislature controls the police power in the state of Nevada. The legislature did delegate that power in Nevada Revised Statute 278.020 to the counties. And so my argument is if the legislature is the source of that power, then if the legislature believes that the county might misuse that power, then the legislature has the power to take back what it gave to the legislature. So the potential of misuse of that zoning power is an exception to Sections 20 and 21 of Article IV of the Nevada Constitution? Well, exactly, Your Honor, because – Is? Yes. Yes. That was the List case. When they created the Tahoe Regional Planning Agency, they carved that Tahoe portion out of three Nevada counties, Douglas County, Carson City, which is the functional – That wasn't misuse. In the Tahoe situation, they had to do – they had to allow the county to make a deal with the California county because the asset was shared by the two counties and the two states. But the only reason they had – But who determines misuse? The legislature determines that the county is misusing the zoning because they don't like the result. Well, at the time, the result hadn't been out, but notice in this case that Clark County has settled with the – But can I ask – But if I could just – I'm sorry. If I could just squeeze this in. The problem in Lake Tahoe was not the fact that the counties couldn't get around – get along. It was the fact that the basin was being developed, and that gradual development was threatening the quality of Lake Tahoe. Well, the problem was both. We only have one of those two characteristics here. But I'd like to get back to the particular Nevada provisions that are at issue here and how the Nevada Supreme Court has interpreted it. I mean, we obviously are at a great disadvantage here. We are not the Nevada Supreme Court. And this case has ended up here basically because the parties, instead of going forward in Nevada State's court, for some reason prefer to go forward here. So one option that I would like you to address at some point is whether we ought to be certifying this to the Nevada Supreme Court. And in particular, this is my concerns, of what seemed to me to be somewhat novel issues. One is, is this county and township business for purposes of Article 20 or Article 4, Section 20? As far as I can tell, all the cases dealing with what county and township business means deal with internal structures, who's going to pay the sheriff, who's going to pay the night watchman, whether they're going to have zoning's going to be in this entity or in that entity. This is substantive. It's not about structures or governance or administration. The cases seem to me to be talking about administration. But I'm not sure of that. Should I be asking the California and Nevada Supreme Court? Your Honor, Mr. Powers will kind of address certification, and we defer to the legislature on that, because it's their power that's being certified here. The reason we're in Federal court is that's where the plaintiffs filed first. We were already into the litigation. We had a motion dismissed pending when they filed the State court action, and we just went forward in Federal court. It wasn't a large strategic decision. Anyway. Well, as Attorney General, you wouldn't oppose certification, would you? No, Your Honor, we would not. Are you arguing this isn't county business? Yes, Your Honor. And the reason it's not county business is because it's not regulating or what? Why doesn't Article 20, Section 20, apply? Section 20 doesn't apply because of several doctrines that were in the List case in creating the Tahoe Regional Planning Agency. What you've got here is a natural resource that the legislature unanimously decided was of importance to the entire State. And so you're not arguing that it's not county or town business? We are arguing that it's not county or town business, because the State legislature It's larger business, not because it's not business. It's not the business of the county, but it's business of a larger of the State as a whole. Right. It goes to the power of the county whether they can zone this any way they want. The State felt that this, the legislature felt, unanimously felt that this property should stay the way it is. And so it's not county business because the legislature, who's the source of the county's power to do that business, said, we don't like the way you're doing it, so we're going to take back that power. But the Constitution tells the legislature they can't do that in local businesses. They can't manage local business. But what they found was this was a matter of State concern. And they're the ones that get to choose. I don't know that it's a gas station in Nevada. You can say it's a matter of State concern that we have a gas station here. You know, Your Honor, I mean, the extreme example is not going to prove the rule. If you applied the reasoning that you're suggesting to me. What is the difference between a legitimate State concern and an illegitimate State concern? I thought that the reason that Nevada had these rules regarding allocation of power between the legislature and the county was not to allow a particular group to lobby the legislature and get a favorable result at the prejudice of the local county. I thought that was the reason why there was a division of labor between the State and the counties. Your Honor, my point is. If you say this is a misuse of the zoning power, tell us what are the parameters of misuse and when is it not a misuse and when is it a misuse? Your Honor, the difference is that the people of Nevada, through their elected representatives in the legislature, decide when something is a State issue. That's our argument. 64 percent of this legislature represents Clark County alone. Yes, but if that's true, the whole provision goes away, right? It doesn't go away. It applies, just as you said, when they say who's going to pay, who, you know, who's going to, you know, whether Pahrump is going to have its own building department. Those kinds of things are county business, but. You could say the same thing that you're saying about that, right? I'm sorry? I'm sorry. I'm interrupting you. But you could say the same thing. Your argument, which is that the county, that this legislature created this and the legislature could change it, would go to the question of whether the zoning power should be in this entity or that entity, too. The legislature could take away the zoning powers. That's the source. They could take it all away if they wanted to, because that's the source of the county's power. In addition, the legislature could put Clark County back into Lincoln County. Are you going to share time with your co-counsel? I would like to, Your Honor. But I'd like to hit one more point under the – well, I'll go ahead. Thank you, Your Honor. May it please the Court. Kevin Powers representing the Nevada legislature. As far as certification goes, there is no Federal question, as the Court has recognized. This is an important issue of State sovereignty, the balance of power between State and local government. What issue would you have us frame and present to the Nevada Supreme Court? Because the Federal – What is the issue? Frame it for me. Well, this particular piece of legislation violates Article 4, Sections 20, 21, and 25 of the Nevada Constitution, exactly what the Federal District Court ruled on. And why is there a need for the Nevada Supreme Court to elaborate? We have these – we have lists. We have a bunch of other cases. There are several important reasons. There's other legislation similar to this Red Rock Act. If this Court rules on the Red Rock Act, it won't be a binding precedent in Nevada. At most, it will be persuasive. It won't be authoritative. And so we'll have other legislation that it would be questionable whether or not it's constitutional because this Court's decision won't bind the rest of the Nevada State District Courts. There's the Spring Mountains National Recreation Act. It's almost identical. Let me ask you this. Can lists be read to cover this particular situation, even though lists dealt with multiple counties and the two States? Yes, lists can be read. Could you focus – I mean, could you draw out of lists the importance of a natural resource? Yes, it is the importance of a natural resource. And the distinction between the gas station and the natural resource is the difference between something that affects only local people, the gas station, and something that affects the entire State, a beautiful, wonderful, unique natural resource. But do you think we ought to – so you could – I could draw out of lists a principle like that. Absolutely. But do you think we ought to ask the Nevada Supreme Court if that's the way they intend lists to be applied? Correct. Because this – that's the closest analogous case here, lists. The district court erred by relying on different cases, but lists is the closest analogous case. 500 square miles is the size of the Tahoe Basin. That could easily fit in Clark County. So if Lake Tahoe was just in Clark County, Nevada legislature couldn't do that. So what about the Reno airport case? The Reno airport case? The Reno airport case involved transferring the Reno airport from the city to a regional airport authority. There, it didn't involve an emergency. It didn't involve a natural resource. It was a particular issue that was peculiar and unique to that county that the legislature had to address. And the Nevada Supreme Court upheld that because it was particular and unusual and had to be addressed by special legislation. Your point earlier, Your Honor, was the county cases dealing with what is regulating county business, all those cases deal with county business, internal political organization, commissioner districts, how we elect our officers, how we fund and salvage. All right. So assuming that's true, so let's go to the next section, i.e., section 21. I don't quite understand how these two sections fit together, because it seems that 21 then gobbles up everything. I mean, 20 very meticulously has this big, long list, and then 21 seems to gobble it up by saying everything has to be uniform anyway. But 21 is clear for the Nevada Supreme Court case. Well, it doesn't gobble it up. If the legislature finds that a general law can't be made applicable because of peculiar circumstances or unusual circumstances, then a special law can be enacted. That's exactly what happened in the Washoe County Airport Authority case. Because of a peculiar and particular nature of those circumstances. But why couldn't they pass a statute that says whenever there's a wonderful natural resource in a county and somebody wants to build, wants to change the zoning from less than two, one house every two acres, they can't do it? And why couldn't you write a law of general application? It's true. And what the cases have said about Article IV, Section 21 is it's always possible to conceive of general laws. Every subject can be covered by a general law. All right. So I'm trying to get to understand what is Article 21 about, then. What's an example of a general law? The Nevada Supreme Court is not about being able to conceive a general law. It's about whether a general law could best serve the interests of the people. That's how they've distinguished it since Hess v. Pegg in 1870. So there's a value judgment, which is better? There is a value judgment. And as Mr. Stockton mentioned, it's made by the legislature. Under Article IV, Section 21, there's great deference by the judiciary to the legislature's initial determination of whether a general law can be made applicable. In other words, it never applies. Give me an example of when it applies. It applies depending on the nature of the circumstances. Because the way you've just defined it, it would never apply, because you would defer to the legislature as to whether you needed to have a special law. And if you did, then you would have a special law. Clearly, in the Nevada case law, it has applied in certain circumstances and invalidated Nevada legislation. But then I would submit this is why this needs to be certified. Has it ever invalidated any Nevada legislation by itself? Article IV, Section 21? I guess I believe it has. Other than cumulatively. I'm sorry. I didn't hear your question. Other than cumulatively, was Section 20 or 25 by itself? I can't answer that specifically, Your Honor. I know all the cases often involve 20, 21, and 25. But I do believe that there are circumstances where 21 may have invalidated a piece of legislation. I can't just say that conclusively, though. Did you make an argument that 20 and 21 don't even apply here? Yes. I think under List it made clear that when you have a natural resource that's of statewide concern, it's not local legislation that falls within 20 and 21. You just don't even go there because it's of statewide concern. And who determines that it's a big natural resource other than the legislature for their own interests? It is the legislature, but with court review. The court, the judiciary reviews the legislature's determination. And what is our desiderata? How do we decide whether it's really a big natural resource or not such a big natural resource? Is it a park or is it a gas station? I think, obviously, common sense comes into play. You know, Lake Tahoe, clearly a beautiful natural resource. Red Rock Canyon, clearly a beautiful natural resource, a large area of land that's unique and distinctive from anything else around. We're not actually talking – are we actually talking – is this area within the park or is it out – I thought it was outside the park. It's adjacent some – It's the perimeter area of the park. Parts of this area, this adjacent lands area, falls within the national conservation area and part falls without. Even the gypsum property land, part of their gypsum property land falls within the conservation area and part falls without. But they couldn't develop that land, right? The land – their land that falls within the area of the – I think the National Conservation Area Act would prevent that development. Right. That is the extent of our time, Your Honor. I certainly can answer any additional questions. Okay. We'll give you some time for rebuttal. You guys can figure out how you want to use it. Let's hear from the appellees from gypsum. Good morning. May it please the Court. I am Edward Berg, representing Apple E. Gypsum Resources in this case. I'd like to answer some of the questions that were posed to – to the appellants, particularly Judge Berzon. In dealing with Section 20, you raised the point of aren't these just cases dealing with the internal structures of government? Every one of them is. I looked at every one of them. Pahrump is the exception, Your Honor. No, it's not. That's also about structure. It's about transferring the zoning power to – from a county to a town or a town to a county. It's about taking away some of the zoning power from the county of Nye and transferring it to – Right. So it's about structure. Well, and this is structure, too, because some of the zoning power to Clark County was taken away, and their ability to change the zoning and – was restricted by the State in the same way – I understand it's a somewhat fine line, but it is a line that seems to me you have to draw, because otherwise everything becomes county and town business. Everything a county and town does is their business. And I think the – it's pretty clear from reading historically back to the cases that what they meant was some of the internal business of the county, what they are doing, how they do things, not what they do. What Parumph said was there's – this is a – this is a significant ongoing shift of government power. And the same thing is true in this case. The – I wanted to go on. Another question that was raised was is there any case that invalidated a state law for Section 21 only? Now, that's what I'm really curious about. Yes. Goodwin v. Sparks was a case involving the redevelopment where the State of Nevada passed a law, and what they said was we're going to allow for tax increment financing and redevelopment in the cities of Reno and Sparks only. The Nevada Supreme Court invalidated that statute under Section 21 only, because what it said was this is clearly – what they said was a general law could be made applicable to this situation. You can't approach the problem of deterioration of inner cities two cities at a time, which is what the Nevada legislature attempted to do in that case. It's exactly the – the obverse of the situation here, which is you can't attack the problem of development encroaching on federally preserved areas one county, one property at a time. It's the same principle. So in that situation on a Section 21 challenge alone – and it's the only – all the other Section 21 cases dealt with can we move the county seat? Was – is there a bond issue? Can we have – prove this bond issue that only applies to a particular hospital or a particular school? And those cases went off on, well, you can't make a general law applicable. But the Nevada Supreme Court in Goodwin v. Sparks said in that situation you could make a general law applicable, same thing that the district court said in this situation. I think that the real problem – So you think a general law saying local zoning does not apply to land contiguous to a national park if it were made for all of Nevada would be all right? The devil's in the details, obviously, Your Honor. There is a – but there is a standard that could be framed that could handle the equally throughout every county in the state. There are a lot of federally protected areas in the state of Nevada. But what you object to is that this is a law by the legislature that affects only Clark County. That is true. Under Section 21 – under Section 20 it's invalid because it's a local or special law that – that regulates county business. Under Section 25 it destroys the uniformity of the – of the powers that counties have because every other county in Clark County – or it's easier to say no other county in Clark County is restricted by the State as to its discretion to zone as to a particular piece of property. This was the first time that any such statute had been passed in Nevada. Could you address the question that was put earlier by Judge Berzon to counsel for the legislature – I guess for the State? What is your position regarding whether we should certify a question to the Supreme Court and if so, what question should we certify? My position is that the – that the issue shouldn't be certified because there is ample precedent under Sections 20, 21 and 25, ample Nevada cases that address this situation. Is this – I'm concerned about overuse of the certification process whenever there's any sort of doubt as to how the issue should come out. This is a matter that was in the district court's supplemental jurisdiction and it was properly before the district court and there's no efficiencies gained, I think, by certifying the question to the Nevada Supreme Court. The issue has been exhaustively briefed and analyzed in the district court. It's been exhaustively briefed and certainly analyzed, obviously, to a great degree by this Court. Well, these – you know, these provisions are very unique to Nevada. It's not like there was an overlapping State constitutional provision that's similar to a Federal constitutional provision. I quite agree. I quite agree. These are unique. They are certainly unique, but that doesn't mean that when a jurisdiction-conferring claim is put into the Federal district court and a supplemental – a supplemental jurisdictional claim related to the same case or controversy that deals with State law, even unique provisions, it doesn't mean – certainly that the district court had discretion under 1367c1 to say, I'm not going to deal with these State issues, but on appeal, the question is, did the district court abuse its discretion in – No, that's a completely different question. We don't – if we certify something, we're not saying the Supreme Court – that the district court did anything wrong. In fact, I don't – do you know if Nevada – if Nevada district courts even can certify? Yes, they can. We cited cases in which the district court certified questions to the Nevada Supreme Court that were accepted and decided. And that's another issue here, is that the – that the case law is clear that certification ought to be discouraged when – when a party puts the issue before the district court and loses, because then, as the McClin case said, the Ninth Circuit said, what you're essentially doing is allowing for a risk-free take-a-run at it in district courts. And then if it doesn't work out, when you go up the ladder on appeals, say, oh, my goodness, this was too hard for me. Yes, but the question isn't really whether they put it or not put it. It's really – I always regard the certification as an aid to us, and I don't really much care what – whether the parties want it or not. The real question is, is it an aid to us? And the – I mean, here we have a situation where it's not only that it's a – that it's a provision that doesn't have a parallel, but it's about the internal organization of the State of Nevada. And it also appears that Nevada has been – the Nevada Supreme Court has been pretty creative in applying this section. I mean, it's kind of created exceptions, and it's limited things sometimes and not other times. And we would – wouldn't we be kind of flailing around in the dark if we started doing it ourselves? I think no more so than in any other cases where the supplemental jurisdiction of the district court is invoked that deal with issues arising under State constitutions. I certainly agree that there are no similar Federal constitutional provisions. And so this is – this is certainly a Nevada constitutional question, no doubt, without provisions that are consistent. And I must agree that certification is for the assistance of the court. I can't – I can't disagree with that. I just think that the case being here, poised for decision with all of the authorities laid out, counsel said that a decision of the Ninth Circuit would not be authoritative in this circumstance – in this circumstance if it were decided. I didn't understand that. Do you understand why it wouldn't be authoritative? Well, I guess that if – if there were a similar statutory enactment and it were to be challenged in Nevada State court, the Nevada State court would look at the opinion of the Ninth Circuit as helpful or as advisory, but not as binding on it. And so, I mean, that almost militates against certification because – that you're not really dealing with a question here that's going to create binding precedent in other situations. It's going to create a – perhaps a road map to decide the case in other situations, but not an authoritative decision on that question. I didn't – I didn't want to pass the question that you originally posed, which is, if certification, what question? And I would agree with the counsel for the – the legislative counsel that the proper question is the constitutionality of SB 358 under Article 4, Sections 20, 21, and 25. There was discussion about the List case. The List case is not – is not dispositive of this situation. What List said – List was dealing with a sui generis situation of the need for an interstate compact lake and land that was in two states, five counties. The United States Supreme Court in the Tahoe-Sierra case described the situation there regarding Lake Tahoe's incredible clarity, and it arose from the fact that there was – that historically, there was so little development that there was little runoff and there was little algae created in the lake. And it was that clarity, that – that marvelous clarity of having a lake up at 6,500 feet, that if not everybody joined in the process of – of protecting that resource, it would be – it would be harmed. And so it was under those circumstances that the states of Nevada and – the states of Nevada and California entered into a compact. The compact was what was at issue in List. And what List said repeatedly was, what we have here is a regional problem, and so it is a situation that demands a solution that can't be undertaken by any single entity. And – and the Nevada Supreme Court said, this situation, this need for regional protection, that one entity can't do it by itself, is what sets it apart from the embrace of Sections 20 and 21. And it – the next sentence it said was, if we were to rule otherwise, there could be no state compacts that we would uphold. Clearly, what the – what the Nevada Supreme Court in List was dealing with was a – was a sui generis situation. And in this court, in the – the Ninth Circuit in the 1975 case of Younger v. Tahoe Regional Planning Agency, 516 Fed 2nd 215 at 218, said, what California fails to acknowledge fully is that the compact and the TURPA are sui generis offsprings of a marriage between sovereign partners, each extremely reluctant to relinquish its sovereignty over a portion of its territory. So the – the List case in upholding the compact between the two States was a situation in which, were it to do otherwise, the – the resource that was at issue could not be adequately controlled. Not so at the Reno Airport case. Why isn't that the most similar case? The Reno Airport case, and it's cited by the – by the Attorney General here to say, basically, that the State giveth power. Whatever the State giveth, the State can take it. Well, forget that. But why isn't, just on its own facts, a very similar case? Basically, you have an entity that is solely within one county, as I understand it, but the legislature decides that it is of importance beyond that county, and it's therefore going to act on it, and then the Madis Supreme Court said, fine, it's not local anymore. Well, what it did in that case was it created an airport authority. It created another level of government, another entity that would control the airport. It's not at all what happened in this case. They didn't put any zoning controls on the land. And what's – what's interesting about that case is that there really couldn't be a – a Section 20 violation, because, as the Court said in that case, Section 20 controls legislation or prohibits legislation, special or local legislation, that restricts county or township business. And this was a city. The City of Reno was the one that was complaining. The City of Reno is not within the protection that is afforded by Section 20. Counties and townships are. So was that a case involving a – a particular piece of, you know, a particular area within the county? The answer to that question is yes, but the circumstances were very different than we have here. There was no imposition. The State never came in and said to the county, thou shalt not zone this property in a particular manner. Of course, it's not the same case. Over the same case, you wouldn't have a problem. But it is – if I didn't think Section 20 was the problem, but I was worried about 21, why isn't that very pertinent? I would say if Section 21 is the concern, which really gets down to the issue of kind of why be made applicable, then Goodwin versus Sparks is the answer to that. That's the only – that's really the only land use case where they came in and said, we're not going to let you do redevelopment two cities at a time. The Reno Airport case is a little bit of a different situation. What it did was it took a chunk of land that was in the City of Reno and transferred it to an airport authority. That's all it did. And that's all that the Nevada Supreme Court upheld. There was no implications on how the property was going to be zoned or used. It was – obviously, it was an airport. So there wasn't that issue in that case. And the Reno – the proposition in the City of Reno – well, I think I've already mentioned that. It's that they – Kennedy. Would you say that if the law was so structured that the land were taken away from a national or a regional park, that would be something the legislature could do? In certain circumstances, absolutely, because the State has a division of parks. The division of parks can acquire land by eminent domain. The State has the ability to protect land that they think is a natural resource. But it's cheaper to protect it by changing the zoning than to buy it. Oh, absolutely. But they didn't change the zoning. They precluded – what they did was they told Clark County it couldn't change the zoning in a particular way. That's true. What's the status of the local zoning ordinance in Clark County today? The status of the local zoning ordinance is that the county passed an ordinance that was in some ways even more restrictive than the State two days later. And after the ruling in this case, the county decided that it didn't want to take its chances of trial on defending that ordinance and would accept applications to rezone the property and would deal with them according to how the county saw most fit and how the people who elected the county board of commissioners wanted them to rule. So they passed the ordinance, but they're not going to enforce it? They actually amended the ordinance. I see. They actually amended the ordinance and said, We're going to go back to the way things were. You can come in and submit an application like anyone else, and we will rule on that application according to the dictates that are placed upon us and what we think is best. So the only thing that's preventing them from doing that is the injunction in this case? Yes. Thank you. Thank you. Or the State law, not the injunction, but just the State law? How much time would you? Two minutes. Two minutes. Okay. Just real quickly, I'd like to address the certification issue. And it's not risk-free. The Nevada Supreme Court is the final, has the final say on the Nevada Constitution. So if you do certify it. You didn't ask the district court to certify this issue to the Nevada Supreme Court, did you? I didn't, Your Honor. It didn't even occur to you. You didn't think about it. I did think of it, but I thought the List case was so clear that I didn't think it was worth the time to go up to the Nevada Supreme Court. Because we're dealing with a unique natural resource. There's only one Lake Tahoe. There's only one Red Rock Canyon. There's only one place like this in the entire state. And so when you talk about making a general law where you restrict the property around all the state parks or all the federal conservation areas, that's not looking at the unique nature of the areas. And different areas are going to need different protection. And just like, you know, Mr. Berg talked about the county commissioners are elected by the people of the county, well, the legislators are elected by the people of the state. And as I mentioned in my brief, 64 percent of those are from Clark County because that's where two-thirds of the population lives. And so, you know, Mr. Berg talked about the TRPA had to be developed to protect the marvelous clarity of Lake Tahoe. Well, here you need to be able to protect the marvelous character of the Red Rock Canyon. And the legislature, as Mr. Powers said, is entitled to great deference when they make these findings. Now, if they make the finding that a building department should be in Pahrump instead of Tonopah, then that's one thing. That's not really a finding about natural resources. The other thing is the Goodwin case where they were redeveloping Reno and Sparks as part of a separate program that wasn't applicable to the other counties. Again, the deterioration of downtown areas is not unique to those two counties, but the Red Rock Canyon is unique. It is unique. There's only one. You got it. Thank you. Thank you. Thank you. Any other council matters submitted? Thank you.
judges: Paez, Berzon, Bea